IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 5:23-CR-50056-001 |
| | ) | |
| JIMMY D. FANT, JR. | ) | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1) of the Federal Rules of Criminal Procedure, the parties hereto acknowledge that they have entered into negotiations which have resulted in this Agreement. The agreement of the parties is as follows:

### WAIVER OF INDICTMENT AND
### PLEA OF GUILTY TO INFORMATION

1. The Defendant, Jimmy D. Fant, Jr., agrees to waive Indictment by a grand jury, and consents to the filing of an Information charging the Defendant with one count of wire fraud, in violation of 18 U.S.C. § 1343, one count of Money Laundering in violation of 18 U.S.C. § 1957. The Defendant further agrees to plead guilty to the Information.

### AGREEMENT REGARDING FORFEITURE

2. The Defendant, Jimmy D. Fant, Jr., agrees to forfeit any and all interest that he may have in the assets which are listed in the Forfeiture Allegation of the Information. The Defendant acknowledges that these assets are subject to forfeiture as proceeds of illegal conduct, property facilitating illegal conduct, and/or property involved in illegal conduct giving rise to forfeiture. The Defendant agrees to execute any and all documents requested by the United States to facilitate or complete the forfeiture process. The Defendant further agrees not to assist any other person or entity in contesting the forfeiture of the properties seized in connection with this case.

3. The Defendant consents to the immediate entry of a preliminary order of forfeiture upon entry of the guilty plea. The Defendant further agrees that upon entry of the preliminary order of forfeiture, such order will be considered final as to Defendant's interests in the property(ies). The Defendant agrees to immediately withdraw any claims to property(ies) seized in connection with this case in any pending administrative and civil forfeiture proceeding, and consents to the forfeit to the United States of all properties seized in connection with this case including but is not limited to, the following:

    a. $6,311.90 seized from Fant's bank account on March 22, 2023,

    b. $93,845.10 in cash, a tennis bracelet, a heart pendant, and hoop earrings seized from Fants's safe deposit box on March 22, 2023,

    c. a 2021 Kubota tractor and a 2020 Hyundai Kona seized on March 28, 2023

4. The Defendant agrees to execute any and all documents requested by the United States to facilitate or complete the forfeiture process(es.) The Defendant further agrees not to contest or to assist any other person or entity in contesting the forfeiture of the property(ies) seized in connection with this case.

5. The Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The Defendant acknowledges that he/she understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise him of this, pursuant to Rule 11(b)(1)(J), at the time his guilty plea is accepted.

6. The Defendant further agrees to waive all constitutional and statutory challenges in

any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The Defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding. The Defendant also agrees that the forfeiture provisions of this Plea Agreement are intended to, and will, survive him, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement.

7.     The Defendant agrees to not contest or appeal the Default Judgment of Forfeiture entered in *United States v. Real Property Located at 109181 S. 4646 Road, Sallisaw, Oklahoma*, W.D. Ark. Case No. 5:23-CV-05051, on July 17, 2023, and further agrees to assist the United States if any other party seeks to contest or appeal the same.

8.     The Defendant will be entitled to credit towards restitution for any forfeiture proceeds remitted to victims.

## ADMISSION OF FACTUAL BASIS IN SUPPORT OF GUILTY PLEA

9.     The Defendant has fully discussed with defense counsel the facts of this case and the elements of the crime to which the Defendant is pleading guilty. The Defendant has committed each of the elements of the crimes to which the Defendant is pleading guilty, and admits that there is a factual basis for his guilty pleas. The following facts are true and undisputed:

   a. In February 2023, the FBI and IRS began investigating the defendant, Jimmy D. Fant, Jr. (Fant), based on a complaint that Fant had embezzled more than $5 million from three jointly owned companies located in the Fayetteville, Arkansas area. The investigation revealed the following:

   b. White River Hardwood and Woodworking, Inc. (White River)White River is a

company located in the Western District of Arkansas with its office in Fayetteville, Arkansas that has manufactured and sold wood and urethane moldings for more than 40 years. The owners of White River also owned, Matrix Investment LLC (Matrix) and Castle Dromborg LLC (Castle Dromborg), which are Arkansas limited liability companies located in the Western District of Arkansas.

      c.    Fant worked as an accountant for White River beginning in 1999, was promoted to Chief Financial Officer (CFO) in 2015 and left his employment with White River in January 2023. As part of his employment with White River, Fant managed the finances of White River, Matrix and Castle Dromborg, and was an authorized person on bank accounts maintained by these entities at the Bank of Fayetteville, an FDIC insured bank with locations in the Western District of Arkansas. Fant was a salaried employee who was not authorized by White River to receive commission payments over and above his salary.

      d.  Beginning in 2013, White River used Isolved Inc. (Isolved), a company headquartered in Charlotte, North Carolina, for time keeping and payroll services. Fant was White River's billing contact person for Isolved and submitted White River's bi-weekly payroll information through Isolved's internet portal. Based on the bi-weekly payroll information provided by Fant, Isolved used a bank account at Zions First National Bank with principal office in Salt Lake City, Utah to debit the total bi-weekly payroll amount from White River's Bank of Fayetteville account ending 4026 and to make payroll payments by direct deposit to the bank accounts of White River employees including Fant's Bank of Fayetteville account ending 0094.

      e.    Zions First National Bank accomplished the transfer of payroll funds between White River and its employees including Fant through the Automated Clearing House system, an electronic funds transfer system that uses interstate wire communications to settle funds between

the Isolved Zion National Bank account and White River's Bank of Fayetteville account ending 4026 and the Fant Bank of Fayetteville account ending 0094.

f. After Fant left his employment in January 2023, White River's new accountant discovered that beginning in August 2014 and continuing to December 2022, Fant used the Isolved internet portal to fraudulently add unauthorized "commission payments" totaling $3,921,184 to his salary amount. The amounts of the fraudulent "commission payments" escalated over time with White River paying Fant unauthorized "commission payments" in 2022 totaling $959,028.38. This was confirmed through records obtained from White River, Bank of Fayetteville, and Isolved.

g. In December 2022, Fant falsely and fraudulently represented to Isolved through the Isolved internet portal that he was to receive from White River a "commission payment" of $44,659.31. Fant's false and fraudulent representation that he was to receive a "commission payment" of $44,659.31 caused Isolved to use the ACH system to debit the fraudulent commission payment amount from White River's Bank of Fayetteville account ending 4026.

h. On or about December 29, 2022, as a result of Fant's false and fraudulent representation that he was to receive a "commission payment" of $44,659.30, Isolved used the ACH system to directly deposit $42,238.97 to Fant's Bank of Fayetteville account ending 0094 which consisted of the fraudulent commission payment plus Fant's salary payment of $2,769.23 minus payroll deductions of $5,189.57.

i. On or about December 29, 2022, Fant used proceeds derived from the fraudulent commission payment made to Fant's Bank of Fayetteville account ending 0094 on December 29, 2022, to obtain a $25,000 cashier's check from the Bank of Fayetteville. This transaction constituted a monetary transaction by and through a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000.00.

j. The investigation also discovered that Fant had made unauthorized and fraudulent transfers from the White River Bank of Fayetteville account ending 4026 totaling $69,124.88 to pay his 401K contributions and $85,076.31 to repay loans made to Fant from his 401K account; that Fant made unauthorized and fraudulent transfers totaling $813,742.97 from the Matrix Farmers and Merchants Bank account ending in 5768 to Fant's Bank of Fayetteville account ending in 0094; and that Fant made unauthorized and fraudulent transfers totaling $317,419.60 from the Castle Dromborg Farmers and Merchants Bank account ending in 5182 to Fant's Bank of Fayetteville account ending in 0094. Fant also used the Isolved portal to overpay his salary in the total amount of $60,396.64. Fant's fraudulent overpayment of his salary including fraudulent commission payments caused White River to overpay the employer share of contributions for Fant to Medicare in the total amount of $55,746.76 and Social Security in the total amount of $32,405.56.

k. Based on the above outlined evidence and other investigation, the United States can prove beyond a reasonable doubt that the Defendant, Jimmy D. Fant, Jr., committed the offenses of Wire Fraud in violation of 18 U.S.C. § 1343 and Money Laundering in violation of 18 U.S.C. § 1957 in the Western District of Arkansas as alleged in the Information.

## ADVICE OF RIGHTS

10. The Defendant hereby acknowledges that the Defendant has been advised of and fully understands the following constitutional and statutory rights:

   a. to have an attorney and if the Defendant cannot afford an attorney, to have one provided to the Defendant and paid for at the United States' expense;
   b. to persist in the Defendant's plea of not guilty;
   c. to have a speedy and public trial by jury;
   d. to be presumed innocent until proven guilty beyond a reasonable doubt;
   e. to confront and examine witnesses who testify against the Defendant;
   f. to call witnesses on the Defendant's behalf;

  g.  to choose to testify or not testify and that no one could force the Defendant to testify; and,

  h.  to have at least 30 days to prepare for trial.

## WAIVER OF RIGHTS

11. The Defendant hereby acknowledges that the Defendant understands with respect to each count to which the Defendant pleads guilty, the Defendnt thereby WAIVES all of the rights listed as (b) through (h) of the above paragraph.

## WAIVER OF ACCESS TO RECORDS

12. The Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

## WAIVER OF "HYDE" CLAIM

13. The Defendant hereby waives any claim under the Hyde Amendment, 18 U.S.C. § 3006A (Statutory Note), for attorney fees and other litigation expenses arising out of the investigation or prosecution of this matter.

## EFFECTS OF BREACH OF THIS AGREEMENT BY DEFENDANT

14. The Defendant agrees that if after signing this Plea Agreement the Defendant commits any crimes, violates any conditions of release, or fails to appear for sentencing, or if the Defendant provides information to the Probation Office or the Court that is intentionally misleading, intentionally incomplete, or intentionally untruthful, or if the Defendant violates any term of this Plea Agreement, takes a position at sentencing which is contrary to the terms of this Plea Agreement, or attempts to withdraw from this Plea Agreement, this shall constitute a breach

of this Plea Agreement which shall release the United States from any and all restrictions or obligations placed upon it under the terms of this Agreement and the United States shall be free to reinstate dismissed charges or pursue additional charges against the Defendant. The Defendant shall, however, remain bound by the terms of the Agreement, and will not be allowed to withdraw this plea of guilty unless permitted to do so by the Court.

15. The Defendant further agrees that a breach of any provisions of this Plea Agreement shall operate as a WAIVER of Defendant's rights under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, and the United States shall be allowed to use and to introduce into evidence any one or more of the following:

    a. admissions against interest, both oral and written, made by the Defendant to any person;
    b. statements made by the Defendant during the Defendant's change of plea hearing;
    c. the factual basis set forth in the Plea Agreement;
    d. any testimony given under oath in these proceedings or to a grand jury or a petit jury;
    e. any and all physical evidence of any kind which the Defendant has provided to the United States; and,
    f. any and all information provided by the Defendant to the United States' attorneys, or to federal, state, county, and/or local law enforcement officers.

16. The Defendant understands and agrees that the United States shall only be required to prove a breach of the Plea Agreement by a preponderance of the evidence. The Defendant further understands and agrees that the United States need only prove a violation of federal, state, or local criminal law by probable cause in order to establish a breach of this Plea Agreement.

## MAXIMUM PENALTIES

17. The Defendant hereby acknowledges that the Defendant has been advised of the maximum penalties for the count to which the Defendant is pleading guilty. By entering a plea of guilty to the two count Information, the Defendant agrees that the Defendant faces:

**As to Count One:**

    a.     a maximum term of imprisonment for 20 years;
    b.     a maximum fine of $250,000;
    c.     both imprisonment and fine;
    d.     a term of supervised release, up to three years, which begins after release from prison;
    e.     a possibility of going back to prison if the Defendant violates the conditions of supervised release;
    f.     a special assessment of $100.00; and,
    g.     restitution as ordered by the Court.

**As to Count Two:**

    a.     a maximum term of imprisonment for 10 years;
    b.     a maximum fine of $250,000 or twice the value of the property involved in the transaction;
    c.     both imprisonment and fine;
    d.     a term of supervised release, up to three years, which begins after release from prison;
    e.     a possibility of going back to prison if the Defendant violates the conditions of supervised release;
    f.     a special assessment of $100.00; and,
    g.     restitution as ordered by the Court.

## CONDITIONS OF SUPERVISED RELEASE

18.     The Defendant acknowledges that if a term of supervised release is imposed as part of the sentence, the Defendant will be subject to the standard conditions of supervised release as recommended by the United States Sentencing Commission and may be subject to other special conditions of supervised release as determined by the Court. The standard conditions of supervised release are as follows:

    a.     The Defendant shall report to the probation office in the federal judicial district where the Defendant is authorized to reside within 72 hours of release from imprisonment, unless the probation officer instructs the Defendant to report to a different probation office or within a different time frame.
    b.     After initially reporting to the probation office, the Defendant will receive instructions from the court or the probation officer about how and when to report to the probation officer, and the Defendant shall report to the probation officer as instructed.
    c.     The Defendant shall not knowingly leave the federal judicial district where the

    Defendant is authorized to reside without first getting permission from the court or the probation officer.
d. The Defendant shall answer truthfully the questions asked by the probation officer.
e. The Defendant shall live at a place approved by the probation officer. If the Defendant plans to change where the Defendant lives or anything about the Defendant's living arrangements (such as the people the Defendant lives with), the Defendant shall notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, the Defendant shall notify the probation officer within 72 hours of becoming aware of a change or expected change.
f. The Defendant shall allow the probation officer to visit the Defendant at any time at the Defendant's home or elsewhere, and the Defendant shall permit the probation officer to take any items prohibited by the conditions of the defendant's supervision that he or she observes in plain view.
g. The defendant shall work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses the Defendant from doing so. If the defendant does not have full-time employment the Defendant shall try to find full-time employment, unless the probation officer excuses the Defendant from doing so. If the Defendant plans to change where the Defendant works or anything about the Defendant's work (such as the position or the job responsibilities), the Defendant shall notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, the Defendant shall notify the probation officer within 72 hours of becoming aware of a change or expected change.
h. The Defendant shall not communicate or interact with someone the Defendant knows is engaged in criminal activity. If the Defendant knows someone has been convicted of a felony, the Defendant shall not knowingly communicate or interact with that person without first getting the permission of the probation officer.
i. If the Defendant is arrested or questioned by a law enforcement officer, the Defendant shall notify the probation officer within 72 hours.
j. The Defendant shall not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person, such as nunchakus or Tasers).
k. The Defendant shall not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
l. If the probation officer determines that the Defendant poses a risk to another person (including an organization), the probation officer may require the Defendant to notify the person about the risk and the Defendant shall comply with that instruction. The probation officer may contact the person and confirm that the Defendant has notified the person about the risk.
m. The Defendant shall follow the instructions of the probation officer related to the conditions of supervision.

## RESTITUTION

19.     The Defendant agrees to pay full restitution to all victims of the offenses to which the Defendant is pleading guilty, and for all losses caused by the Defendant's criminal conduct even if such losses resulted from crimes not charged in the Information or admitted to by the Defendant in the factual statement.  The Defendant acknowledges and agrees that all restitution as agreed to above shall be governed by the provisions of the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A.  The Defendant understands full restitution will be ordered regardless of the Defendant's financial resources.  The Defendant further understands the restitution will be determined by the Court.  The Defendant agrees to cooperate in efforts to collect the restitution obligation, by any means the United States deems appropriate and agrees to waive any defense or objections to any action to enforce the collection of the restitution.  The Defendant understands imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.  The Defendant acknowledges that any restitution imposed is not dischargeable in any bankruptcy proceeding pursuant to 18 U.S.C. § 3613(e).

## AGREEMENT TO PROVIDE FINANCIAL INFORMATION

20.     The Defendant agrees that no later than thirty (30) days after the change of plea, the Defendant shall complete the financial disclosure statement and the accompanying releases provided by the United States Attorney's Office and deliver them to the United States Probation Office and the United States Attorney's Office. This financial disclosure statement is sworn by the Defendant to be true and correct under penalty of perjury. The Defendant agrees that his failure to truthfully and fully complete the financial disclosure statement and accompanying releases may result in the Government objecting to the Defendant receiving a reduction for acceptance of responsibility.

## PAYMENT OF MONETARY PENALTIES

21. The Defendant agrees that monetary penalties to include special assessments, fine, and/or restitution imposed by the Court will be: (i) subject to immediate enforcement as provided in 18 U.S.C. § 3613c; and (ii) submitted to the Treasury Offset Program so that any federal payment such as an income tax refund or transfer of returned property the Defendant receives may be offset and applied to federal debt without affecting the periodic payment schedule ordered by the Court.

## NO OTHER CHARGES

22. The United States agrees that no other federal charges, which stem from the activities described in the Information, will be brought against the Defendant in the Western District of Arkansas.

## SENTENCING GUIDELINES ARE ADVISORY BUT NOT MANDATORY

23. The parties acknowledge that the Court shall consult and take into account the United States Sentencing Commission Guidelines in determining the sentence, but that the Court is not bound by the Guidelines and may sentence the Defendant to any sentence within the statutory range.

## AGREEMENT DOES NOT PROMISE A SPECIFIC SENTENCE

24. The Defendant acknowledges that discussions have taken place concerning the possible guideline range which might be applicable to this case. The Defendant agrees that any discussions merely attempt to guess at what appears to be the correct guideline range and do not bind the District Court. Further, the Defendant acknowledges that the actual range may be greater than contemplated by the parties. In the event that the actual guideline range is greater than the parties expected, the Defendant agrees that this does not give the Defendant the right to withdraw

the Defendant plea of guilty.

## RELEVANT CONDUCT CONSIDERED

25. At the sentencing hearing, the United States will be permitted to bring to the Court's attention, and the Court will be permitted to consider, all relevant information with respect to the Defendant's background, character, and conduct, including the conduct that is the subject of this investigation for which the Defendant has not been charged up to the date of this Agreement, and/or which is the basis for any of the counts which will be dismissed pursuant to this Agreement, as provided by § 1B1.3 of the Sentencing Guidelines.

## PERJURY

26. In the event that it is determined that the Defendant has not been truthful with the Court as to any statements made while under oath, this Agreement shall not be construed to protect the Defendant from prosecution for perjury or false statement.

## CONCESSIONS BY THE UNITED STATES

27. The United States agrees to recommend that the Defendant be sentenced within the guideline range as determined by the Court.

28. The United States agrees not to object to a recommendation by the Probation Office or a ruling of the Court which awards the Defendant an appropriate-level decrease in the base offense level for acceptance of responsibility. If the offense level in the Presentence Report is 16 or greater and the Court accepts a recommendation in the Presentence Report that the Defendant receive two points for acceptance of responsibility, the United States agrees to move for an additional one-point reduction for acceptance of responsibility for a total of three points. However, the United States will not be obligated to move for an additional one-point reduction or recommend any adjustment for acceptance of responsibility if the Defendant engages in conduct

inconsistent with acceptance of responsibility including, but not limited to, the following: a) falsely denies, or makes a statement materially inconsistent with, the factual basis set forth in this Agreement; b) falsely denies additional relevant conduct in the offense; c) is untruthful with the United States, the Court, or probation officer; or d) materially breaches this Plea Agreement in any way.

## UNITED STATES' RESERVATION OF RIGHTS

29. Although the United States agrees not to object to certain findings by the Probation Office or to rulings of the Court, it reserves the right to:

    a. make all facts known to the Probation Office and to the Court;
    b. call witnesses and introduce evidence in support of the Presentence Report;
    c. contest and appeal any finding of fact or application of the Sentencing Guidelines;
    d. contest and appeal any departure from the appropriate guideline range; and,
    e. defend all rulings of the District Court on appeal including those rulings which may be contrary to recommendations made or positions taken by the United States in this Plea Agreement which are favorable to the Defendant.

## NO RIGHT TO WITHDRAW THE GUILTY PLEA

30. The United States' concessions on sentencing options are non-binding and made pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure. As a result, if the Court should reject the Defendant's requests or recommendations for certain findings of fact or applications of the Guidelines, the Defendant acknowledges that there is no right to withdraw the guilty plea.

## AGREEMENT NOT BINDING ON THE COURT

31. The parties agree that nothing in this Agreement binds the Court to:

    a. make any specific finding of fact;
    b. make any particular application of the Sentencing Guidelines;
    c. hand down any specific sentence;
    d. accept any stipulation of the parties as contained in this Plea Agreement; or
    e. accept this Plea Agreement.

32. The United States and the Defendant acknowledge that the Court has an obligation to review the Presentence Report before it accepts or rejects this Plea Agreement.

### AGREEMENT DOES NOT BIND ANY OTHER ENTITY

33. The parties agree that this Plea Agreement does not bind any governmental entity other than the United States Attorney's Office for the Western District of Arkansas.

### SPECIAL ASSESSMENT

34. The Defendant agrees to pay $200.00 as the special assessment in this case.

### REPRESENTATIONS BY DEFENDANT

35. By signing this Plea Agreement, the Defendant acknowledges that:

   a. The Defendant has read this Plea Agreement (or has had this Plea Agreement read to him/her) and has carefully reviewed every part of it with defense counsel.
   b. The Defendant fully understands this Plea Agreement and is not under the influence of anything that could impede the Defendant's ability to fully understand this Plea Agreement.
   c. No promises, agreements, understandings, or conditions have been made or entered into in connection with the decision to plead guilty except those set forth in this Plea Agreement.
   d. The Defendant is satisfied with the legal services provided by defense counsel in connection with this Plea Agreement and matters related to it.
   e. The Defendant has entered into this Plea Agreement freely, voluntarily, and without reservation, and the Defendant's desire to enter a plea of guilty is not the result of threats or coercion directed at the Defendant or anyone connected with the Defendant.

### REPRESENTATIONS BY DEFENSE COUNSEL

36. By signing this Plea Agreement, counsel for the Defendant acknowledges that:

   a. Counsel has carefully reviewed every part of this Plea Agreement with the Defendant, and this Plea Agreement accurately and completely sets forth the entire agreement between the United States and the Defendant.
   b. Counsel has explained the ramifications of the Plea Agreement to the Defendant, and believes that the Defendant understands this Plea

    Agreement, what rights are being lost by pleading guilty, and what the United States has agreed to do in exchange for the plea of guilty.

c.    Counsel believes that the Defendant's decision to enter into this Plea Agreement is an informed and voluntary one.

## PLEA AGREEMENT CONSTITUTES THE ENTIRE AGREEMENT

37.    The Defendant and the Defendant's attorney both acknowledge that this Plea Agreement constitutes the entire agreement of the parties. Further, all parties agree that there are no oral agreements or promises which have been made to induce the Defendant to change his/her plea to guilty.

Dated this __18__ day of __August__, 2023.

_____  
JIMMY D. FANT, JR.  
Defendant

_____  
JOE ALFARO  
Assistant Federal Public Defender  
Attorney for Defendant

DAVID CLAY FOWLKES  
UNITED STATES ATTORNEY

By:_____  
    KENNETH ELSER  
    Assistant U.S. Attorney